[No. AO15431. First Dist., Div. One. Apr. 26, 1984.]

OSCAR BRANDT et al., Plaintiffs and Appellants, v.
LOCKHEED MISSILES & SPACE COMPANY, INC., et al.,
Defendants and Appellants.

1126

COUNSEL

Randall M. Widmann and Martha Anne McKee for Plaintiffs and Appellants.

Pillsbury, Madison & Sutro, Walter R. Allan, Kevin M. Fong, Phillips, Moore, Lempio & Finley, Carlisle M. Moore and Neil Boorstyn for Defendants and Appellants.

OPINION

ELKINGTON, Acting P. J.—By their "Complaint for Money, for Breach of Contract, for Damages for Bad Faith, for Damages for Breach of Confidential Relationship," in an action against their employers, Lockheed Missiles & Space Company, Inc., a corporation, and Lockheed Aircraft International, Inc., a corporation (hereafter in the singular, Lockheed), plaintiffs Oscar Brandt and Joseph Harris sought damages for Lockheed's claimed failure reasonably to reward them for an invention, the patent rights of which they had assigned to Lockheed.

Following trial of the issues, a jury found in favor of plaintiffs against Lockheed for $2,357,800 in compensatory damages, and $235,780 in punitive damages. The court thereafter *denied* Lockheed's motion for judgment notwithstanding the verdict, and *granted* Lockheed's alternative motion for a new trial, unless "plaintiffs file a remission of the judgment in the sum of $1,793,000.00 leaving a total judgment as and for compensatory damages in the sum of $564,800.00 plus costs [and] they file a remission of the punitive damage aspect of this case in the sum of $235,780.00[; if] remission is filed as aforesaid, the motion for new trial is denied." Plaintiffs did not agree to the remission, and the motion for a new trial accordingly was granted.

Plaintiffs Brandt and Harris have appealed from the order granting a new trial. Lockheed has appealed from the judgment entered upon the jury's

verdict, and from the order denying its motion for judgment notwithstanding the verdict.

Certain of the trial's evidence appears to be uncontroverted. We relate it.

Plaintiffs Brandt and Harris were first employed by Lockheed, respectively, in 1949 and 1959, as professional engineers. Upon their employment it was pointed out to them that a condition of such employment was that they sign a "Security and Assignment of Inventions Agreement." *The agreement was in part consideration for the salaries to be paid them by Lockheed.* As relevant to the appeals, it expressly provided as follows:

*"All . . . inventions . . . conceived or made by me either alone or with others, during the period of my employment . . . shall be and are the sole property of the Company.*

"I will disclose promptly and in writing to the officials designated by the Company to receive such disclosure, all such inventions . . . and *I hereby assign . . . all my right, title and interest in and to such inventions to the Company. . . .*" (Italics added.)

Plaintiffs were valued employees of Lockheed. Brandt soon became manager of the department of engineering design of the company's space systems division, and was known and respected as a "problem solver." Harris became "project lead" in the same space systems division. Among the problems of that division was the difficulty in perfecting a device to cause the separation of parts and stages of rockets, and missiles, in space.

Brandt and Harris were assigned to the project. They were furnished the necessary funding, facilities, equipment, and trained assistance by Lockheed. Basic ideas for the project had previously been developed and patented by other Lockheed engineers. After much thought, and time and effort, Brandt and Harris indisputably managed to solve the problem well. A patent application was filed which expressly pointed out that it was a development of an earlier patented invention of Lockheed engineers. The application was first rejected, but upon its renewal a patent was granted. The patent, according to the above-noted agreement, was assigned to Lockheed.

There was a written Lockheed Patent Plan. As relevant to the appeals it was bipartite.

First, if an employee's invention was deemed of sufficient value to apply for a patent, all expenses therefor were paid by the company, and the em-

ployee, *in all cases,* would receive $100 upon the application's filing, and $500 if and when a patent was finally granted.

Additionally, the patent plan provided for "Special Invention Awards." Under this heading an invention awards committee was set up, which "upon written request of the inventor-employee . . . will consider whether or not a Special Invention Award shall be made to the inventor-employee . . ., provided that the initial request is made within the period of two years."

The special invention awards provision of the patent plan provided:

"[T]he Invention Awards Committee . . . will consider whether or not a Special Invention Award shall be made to the inventor-employee. . . . Upon consideration of such request the *Committee may, but is not obligated to, grant to the inventor-employee a Special Invention Award. . . . All decisions by the Committee . . . shall be final and conclusive."* (Italics added.)

And under the special invention awards provision, Lockheed had made awards to employee-inventors from a minimum of $250 to a maximum of $20,000.

Brandt and Harris, according to the first, and mandatory, provision of the patent plan, were promptly paid $100 upon the filing of a patent application for their invention, and $500 upon the granting of a patent therefor.

Thereafter, and beyond the two-year period of the patent plan, Brandt and Harris applied for a discretionary special invention award. Its untimeliness was waived by Lockheed, and the application was submitted to the invention awards committee. There it met with some resistance; committee members expressed a belief that there were other people who had played a significant role in the invention, including one who "was the father of the basic concept." But an award of $5,000 was finally decided upon, to "equitably be distributed to all four of the inventors." Brandt and Harris received two shares of the award, or $2,500.

Dissatisfied with the amount of the award, Brandt and Harris filed the instant action.

Their theory at the trial was that the Lockheed Patent Plan and its promised benefits were a condition of their employment, and that by the modest special invention award of $2,500 to them, Lockheed had violated the plan's *"implied duty of good faith and fair dealing."*

We first consider Lockheed's appeal from the superior court's order denying its motion for judgment notwithstanding the verdict, and from the judgment entered upon the jury's verdict.

The superior court had instructed the jury:

"In considering the evidence in this case, you will do so in light of the following acts which have been conclusively established by plaintiffs: (1) The defendants' Patent Plan is a part of the plaintiffs' employment contract; (2) The defendants owe the plaintiffs a duty of good faith and fair dealing pursuant to their employment contract which includes the Patent Plan."

We shall assume that such facts were conclusively established.

■ The issue for our consideration at this point, however, is whether there was substantial evidence before the jury that Lockheed had *violated* its duty of good faith and fair dealing in respect of the patent plan.

It is first emphasized that Lockheed had concededly, and promptly, complied with the first of the patent plan's here relevant provisions, by awarding Brandt and Harris $100 and $500 respectively, upon the filing, and granting, of their patent application.

The immediate issue is thus narrowed to whether a *legal duty* was cast upon Lockheed's Invention Awards Committee to make a special invention award under an employment contract providing that upon an employee-inventor's request therefor:

"[T]he Invention Awards Committee . . . will consider whether or not a Special Invention Award shall be made to the inventor-employee. . . . Upon consideration of such request the Committee may, but is not obligated to, grant to the inventor-employee a Special Invention Award. . . . All decisions by the Committee . . . shall be final and conclusive."

■ There can be no doubt that "the 'implied-in-law covenant of good faith and fair dealing [is] inherent in every [employment] contract.'" (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 327 [171 Cal.Rptr. 917].) ■ "However, *what that duty embraces* is dependent upon the nature of the bargain struck between [the parties] and the legitimate expectations of the parties which arise from the contract." (Our italics; *Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038].)

■ Few principles of our law are better settled, than that "[t]he language of a contract is to govern its interpretation, if the language is clear and

explicit. . . ." (Civ. Code, § 1638; *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 609 [155 Cal.Rptr. 870]; *Spitser* v. *Kentwood Home Guardians* (1972) 24 Cal.App.3d 215, 220 [100 Cal.Rptr. 798]; *Molybdenum Corp. of America* v. *Kasey* (1959) 176 Cal.App.2d 357, 363 [1 Cal.Rptr. 400]; *Hicks* v. *Whelan Drug Co.* (1955) 131 Cal.App.2d 110, 114 [280 P.2d 104].)

Here the language of the parties' contract of employment, i.e., the patent plan, could not be more clear and explicit. It says Lockheed's Invention Awards Committee *"may, but is not obligated to* grant a Special Invention Award,"* and that its decision on such matters "shall be *final and conclusive."* Lockheed had fully respected the patent plan's language; it may not reasonably be said that in doing so it violated "a duty of good faith and fair dealing."

We accordingly find neither authority, nor substantial evidence, supportive of the jury's verdict or any judgment in favor of Brandt and Harris. Under the law and the trial's evidence the compensatory damages awarded by the jury may not stand.

And the superior court having properly instructed the jury "that the punitive damages must bear a reasonable relation to actual damages," the punitive damage award also was invalid.

We have considered plaintiffs' contention that Lockheed had purposefully kept them in ignorance of the patent plan's existence, and that they were therefore unaware of it until long after their invention. As noted Lockheed waived the patent plan's two-year filing period for plaintiffs' application. Their claimed ignorance of the limitation period is therefore irrelevant. Moreover, it is found contrary to their evidentiary admissions, and it otherwise finds no support in substantial evidence.

Brandt had testified that, before the subject invention, the patent plan was often mentioned in the company newspaper, and that "it was discussed among the engineers and supervision and so forth." He was aware of the patent plan at least a year before the patent was granted. And he and Harris knew that Lockheed "had booklets on it," for distribution to the company's employees; at some point they had gotten one "and we both studied it." Moreover, plaintiffs' contention of unawareness of the patent plan is in deep conflict with their claim that it was a condition of their employment upon which they relied.

And although obviously irrelevant to the conclusions we have reached, we shall briefly discuss plaintiffs' evaluation of their invention, and their claimed resultant damages. Early in the case's history Harris was asked by Lockheed to place "a dollar value" on the patent's contribution to the company's programs. Harris gave a figure of $64,000. Soon however the figure, as we read the record, was raised to "$162,000," and then successively "$50,000,000," "$60,000,000," "$368,000,000," and "$400,960,000 to $429,000,000." On cross-examination on some of his estimates, Harris testified, "they don't really refer to anything," "I don't know why I put it down there," and "I just gave some numbers." Other evidence suggested that the huge dollar values given by plaintiffs had applied to entire systems, like "MX missiles," of which the invented device was but a minor part, and that they were the appraised value of "contracts that had [the invention] in it." But on the appeal we are nevertheless repetitiously told that Lockheed "reaped over $400,000,000 in sales from plaintiffs' invention." The statements are unsupported by the record.

For these several reasons the superior court's judgment and order denying Lockheed's motion for judgment notwithstanding the verdict must be reversed. In their stead judgment will be entered in favor of defendant Lockheed.

Plaintiffs' appeal from the order granting a new trial, thus becomes moot. That appeal will be dismissed, and the superior court will be directed to set aside the order granting a new trial.

The order denying defendants' motion for judgment notwithstanding the verdict, and the judgment entered upon the jury's verdict, are, and each is, reversed. Plaintiffs' appeal from the order granting a new trial is dismissed. The superior court will set aside its order granting a new trial, and will enter judgment in favor of defendants and against plaintiffs. The parties will stand their respective costs of appeal.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied May 25, 1984, and the opinion was modified to read as printed above. The petition of plaintiffs and appellants for a hearing by the Supreme Court was denied July 11, 1984. Bird, C. J., was of the opinion that the petition should be granted.