[No. D009189. Fourth Dist., Div. One. Mar. 28, 1990.]

MARIA T. TOLLEFSON et al., Plaintiffs and Appellants, v. ROMAN CATHOLIC BISHOP OF SAN DIEGO et al., Defendants and Respondents.

846

848

COUNSEL

Thomas & Teaff and John H. Thomas for Plaintiffs and Appellants.

Stephen R. Mulligan and Suuzen Ty Anderson for Defendants and Respondents.

OPINION

WORK, J.—Maria T. Tollefson and her husband, James, appeal a judgment entered after the trial court granted defendants'[1] motion for summary judgment on a wrongful termination complaint arising from the Diocese's failure to renew her one-year written contract for an administrative position as assistant high school principal. They essentially contend the trial court erred in granting summary judgment because a covenant of good faith and fair dealing required the Diocese to employ "objective standards" in deciding whether to offer her a new contract and that she could reasonably have expected continual renewals of the professional contract as long as she performed satisfactorily considering her long-term employment relationship during which her administrative contract had been renewed for seven successive one-year terms by agreements expressly assuring her "professional

---

[1] The defendants include the Roman Catholic Bishop of San Diego; Diocese of San Diego Education & Welfare Corporation; Marian High School; Reverend Leo T. Maher, Bishop of San Diego; Reverend Dennis R. Clark; and Daniel J. Ramos (collectively, Diocese).

growth." As we shall explain, the trial court correctly granted the Diocese's motion for summary judgment because the Diocese and its employees fully conformed to the express terms and plain language of an employment contract obliging neither party to renew at the end of the agreed upon, fixed term. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Marian High School is a privately funded school, which is part of the Apostolic Ministry of the Roman Catholic Church, operated by the Roman Catholic Bishop of San Diego and the Diocese of San Diego Education and Welfare Corporation. Maria Tollefson taught at Marian High School from 1967 to 1970 and again from 1975 to 1978. She was employed as an assistant principal from 1978 to 1985 under a series of contracts, each covering a single academic year.

On April 15, 1984, Tollefson, the Diocese and Marian High School executed another contract for her professional service as assistant principal. The contract stated the Diocese and the school desired to obtain her professional service as assistant principal for the term and under the conditions provided in the contract and that Tollefson was willing to provide such service for the term and under the conditions set forth in the contract. Regarding "term," the contract expressly provided in article VI:

"The term of this EMPLOYMENT AGREEMENT shall be for a one year period commencing on July 1, 1984, and terminating on June 30, 1985.

"If DIOCESE and SCHOOL wish to retain the services of ADMINISTRATOR for an additional term following this contract, ADMINISTRATOR will be so notified in writing on or before March 15. If ADMINISTRATOR does not wish to be considered for employment by DIOCESE and SCHOOL for the following year, ADMINISTRATOR will so notify SCHOOL in writing on or before February 1.

"ADMINISTRATOR may request to return to teacher status. ADMINISTRATOR would be placed on the class and step appropriate to his education and teaching experience." Regarding "administrator status," Article IV declared: "It is understood that ADMINISTRATOR is being employed as an ADMINISTRATOR for a one year period and that there is no obligation on the part of the DIOCESE, SCHOOL or ADMINISTRATOR to renew this contract at the end of that term. DIOCESE and SCHOOL reserve the right to transfer ADMINISTRATOR to other administrative or instructional positions within the SCHOOL." As to renewal, Article VIII stated: "If DIOCESE and SCHOOL wish to retain the services of ADMINISTRATOR for an ensuing term, PRINCIPAL shall offer ADMINISTRATOR a new EMPLOYMENT AGREEMENT no later than April 15. If ADMINISTRATOR does not sign and

return EMPLOYMENT AGREEMENT to PRINCIPAL within two weeks after it has been offered, the offer of reemployment shall be deemed to have been rejected by ADMINISTRATOR. Regarding the respective duties of the Diocese and school and the administrator, Articles II and III pertinently provided:

"II. DUTIES OF DIOCESE AND SCHOOL

"DIOCESE shall establish the general policies including administrator evaluation criteria and guidelines for the control and operation of SCHOOL and staff. These policies shall be set forth in the Diocesan ADMINISTRATIVE HANDBOOK FOR SCHOOLS be made known to ADMINISTRATOR and are subject to review and possible modification as is customary in schools.

". . . . . . . . . . . . . . . . . . .

"ADMINISTRATOR shall have available, at reasonable times, the services of other administrative personnel of SCHOOL for purposes of orientation, consultation, supervision and evaluation in order to assure the professional growth of ADMINISTRATOR.

"III. DUTIES OF ADMINISTRATOR

"ADMINISTRATOR shall give the best full-time professional services of which ADMINISTRATOR is capable to SCHOOL, exhibit conduct in professional work and in personal life which shall be consistent with the aims of SCHOOL and DIOCESE, and abide by the regulations of SCHOOL, especially as set forth in the SCHOOL HANDBOOK, and the policies of DIOCESE, especially as set forth in the Diocesan ADMINISTRATIVE HANDBOOK FOR SCHOOLS.

"ADMINISTRATOR recognizes that SCHOOL is an apostolic ministry of the Roman Catholic Church, and that the role of ADMINISTRATOR in such ministry is to offer to the community positive example and support."[2]

On March 15, 1985, Daniel Ramos, the principal of Marian High School since September 1983, informed Tollefson she would not be offered a new contract as an administrator for the coming year. Ramos confirmed his action by letter declaring: "After thoughtful consideration, prayerful reflection and a determination of my needs and that of Marian High School, I have decided to progress forward with my intentions of reorganizing my administrative staff. Regretfully, this reorganization does not include you as a member of the administrative staff for the next school year, 1985-86.

"I do recognize and appreciate your qualities and commitment to Marian High School. However, as I visualize wanting needs, they include in part, a

---

[2] All administrators at Marian High School were employed under the same administrator contract form that Tollefson had executed.

complementing of my personal self, the creativity and innovation for school programs, and management skills to progress forward. While I appreciate the intensity of our recent discussions and your commitment to me, it is my judgment to continue in this vision for Marian. I do hope that you would seriously consider staying at Marian as an educator and continue to be an important part of this community. You have many strengths and much to give."

Tollefson accepted employment as a teacher at Marian High School and appealed the decision not to renew her administrator contract through the Diocesan review process. During a Diocesan appeals hearing, Tollefson admitted no one had ever indicated she had a right to renewal even if she performed well. In May 1986, her final appeal was denied by the Diocesan Board for Educational Ministry. The Tollefsons then sued for actual and punitive damages, asserting causes of action for bad faith discharge, breach of employment contract, negligent discharge, intentional infliction of emotional distress, negligent infliction of emotional distress and loss of consortium against the Diocese, Bishop Maher, Reverend Clark, and Principal Ramos. On July 22, 1988, the Diocese moved for summary judgment on the ground the one-year written contract expressly provided the Diocese with no obligation of renewal and that the implied covenant of good faith and fair dealing could not be employed to imply provisions contrary to those expressly agreed upon by the parties. In support of their motion, Ramos declared: "In the administration of schools it is common that administrators are employed under a one year contract. A one year contract allows for flexibility and change to occur to accommodate new needs. Administrators who execute these employment contracts understand that they are only for a one year period. Each administrator has objectives and goals which are necessitated by the demand of their constituents. As the Chief Administrator, I am given the discretion to carry out and implement these goals. After completing one and a half years as principal I decided that the school lacked a viable development program and that new and more innovative curriculum was needed. To accomplish these goals I felt it necessary to make an administrative staff change. In addition, budget contraints [*sic*] made such a personnel change desirable. I exercised my discretion to not offer an administrator contract to MARIA TOLLEFSON for the 1985-1986 school year solely for the welfare of Marian High School."

In opposition, the Tollefsons contended the duty of good faith and fair dealing required the Diocese to offer her a new contract unless there was "just reason" for not doing so in light of her length of employment, the mere formality of executing these successive form employment agreements, the express language of the agreement requiring written evaluations and counseling "to assure the professional growth of ADMINISTRATORS" the

failure of Ramos to provide her with any written evaluations and the concealment for several months of their decision to remove her from the position of assistant principal.

In granting the motion, the trial court reasoned: "Well, she wasn't discharged by the Diocese. She was essentially not renewed as an administrator and renewed as a teacher. In my judgment you lose on two grounds: one, it's not a discharge; two, the contract is specific. And it's clear to me that the Diocese, on giving notice within the time limits allowed, has the right to terminate an administrator at will and change her position.

"I mean it seems to me inherent in this contractual and statutory scheme that the district has to have certain power or the Diocese has to have certain power to move its teachers and employees in these schools around to accommodate need. And consequently, the contract says that, you know, if they give notice by a certain time of the year of nonrenewal, they have the right not to renew." Finally, the court declared: "This is not a wrongful termination case, which is what you contend. It's a wrongful demotion case. And I don't think there's any authority for the proposition, on these facts, that that's tortious in this jurisdiction."

## STANDARD OF REVIEW

■ A summary judgment may be granted only where no material triable issue of fact exists, and the moving parties' affidavits recite facts entitling them to judgment as a matter of law. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 364 [182 Cal.Rptr. 629, 644 P.2d 822]; *Lopez* v. *McDonald's Corp.* (1987) 193 Cal.App.3d 495, 503 [238 Cal.Rptr. 436]; Code Civ. Proc., § 437c.) Designed to resolve litigation by avoiding needless trials (*Ferrell* v. *Southern Nevada Off-Road Enthusiasts, Ltd.* (1983) 147 Cal.App.3d 309, 313 [195 Cal.Rptr. 90]), the purpose for summary judgment "is to penetrate evasive language and adept pleading and to ascertain, by means of affidavits, the presence or absence of triable issues of fact" (*Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]). Accordingly, a trial court's function in ruling on motions for summary judgment is confined to determining whether material issues of fact exist, and not to decide the merits of the issues themselves. (*Ibid.*) Because depriving a party of a trial on the merits is a drastic procedure, it should be used with caution to avoid becoming a substitute for trial determination of the facts and merits of a cause. (*Id.* at p. 1107; *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 852 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ "In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in

favor of the party opposing the motion." (*Id.* at pp. 851-852, quoting *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Twohig* v. *Briner* (1985) 168 Cal.App.3d 1102, 1105 [214 Cal.Rptr. 729].) ■ Consequently, to succeed here, the Diocese must conclusively establish as a matter of law that under no hypothesis presented by the Tollefsons is there an unresolved material issue of fact. (See *Molko* v. *Holy Spirit Assn., supra,* 46 Cal.3d at p. 1107.)

## THE COVENANT OF GOOD FAITH AND FAIR DEALING DOES NOT TRANSMUTE THE PARTIES' EMPLOYMENT CONTRACT SO AS TO REQUIRE THE DIOCESE TO EMPLOY AN OBJECTIVE STANDARD IN DETERMINING WHETHER TO RENEW TOLLEFSON'S EXPIRED CONTRACT

Tollefson primarily contends the implied covenant of good faith and fair dealing requires the Diocese to employ an "objective standard" in deciding whether to renew her expired employment contract. In other words, she argues unless nonrenewal can be objectively justified, there is a duty to renew. As we shall explain, Tollefson's attempt to transmute this express, written, one-year, employment contract, definitively declaring neither party is required to renew, into an implied contract for an indefinite term terminable only upon objective and justifiable cause, is conceptually flawed and without legal support.[3]

■ We recognize the law implies a duty of good faith and fair dealing in every contract (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 768 [206 Cal.Rptr. 354, 686 P.2d 1158];*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]), including employment contracts (*Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 663 [254 Cal.Rptr. 211, 765 P.2d 373]). More precisely, the Restatement Second of Contracts, section 205 states: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." (See *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 683.) Regardless whether this duty to deal fairly and

---

[3] Tollefson presumes the trial court failed to apply the implied covenant of good faith and fair dealing to her employment contract in determining the merits of the Diocese's motion for summary judgment, simply because the court characterized this case as a "wrongful demotion" matter and not a "wrongful termination" case. The court further explained that it did not believe there existed any authority which warranted tortious relief on the facts of this case. Although we grant she was not renewed as an administrator, we believe the trial court's characterization of this case as a "wrongful demotion" case is accurate and further there exists no California precedent warranting either contractual or tortious relief under these circumstances. As will become apparent in the text, the trial court's correct reasoning does not necessarily imply the court did not recognize the implied covenant of good faith and fair dealing exists in every contract. The issue is not its existence in every contract, but rather its effect and impact upon the parties' agreement.

in good faith arises from a contract or is simply imposed by law involving obligations which are not consensual in character (compare the maj. opn. with Kaufman, J., conc. and dis. opn. in *Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 683-684, 716), the nature and extent of the obligations imposed by this duty arise from the nature and purpose of the underlying contract and the legitimate expectations of its parties. (*Brandt* v. *Lockheed Missiles & Space Co.* (1984) 154 Cal.App.3d 1124, 1129 [201 Cal.Rptr. 746].) Thus, regardless of origin, the covenant of good faith and fair dealing is designed to effectuate the intentions and reasonable expectations of parties reflected by mutual promises within the contract. (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at pp. 683-684.) However, it cannot be used to imply an obligation which would completely obliterate a right expressly provided by a written contract. (*Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 277 [235 Cal.Rptr. 279]; see *Gianaculas* v. *Trans World Airlines, Inc.* (9th Cir. 1985) 761 F.2d 1391, 1394-1395.)

■ Here, we are not confronted by a written employment contract which is uncertain in duration or as to the parties' obligation to renew. This written contract expressly limits the term of employment to one year and provides that neither party need renew the agreement. Consequently, by express language, the contract precludes the existence of any contrary implied agreement to employ Tollefson for more than a year or require renewal in the absence of good cause for not doing so. We reject Tollefson's attempt to look to an implied covenant of good faith and fair dealing to transmute this unequivocal agreement to one terminable only upon a finding of just cause. That doctrine, employed to insure conformance to the reasonable expectations of the parties implied from the nature of their contract, cannot be used to rewrite a contract to include provisions entirely foreign to and expressly negated by the original.

Further, Tollefson's reasoning a "subjective nonrenewal" essentially constitutes a termination because of the loss of the administrative position is flawed. No "termination" occurred here except that expressly contemplated by the employment agreement. Although termination contrary to the express terms of an employment contract may be actionable, a decision not to enter into a new contract or renew an expired one is not. Tollefson's employment was not terminated by an act inconsistent with the terms of the contract, but rather by the expiration of the agreed contract term. ■ "It is the general rule that when a contract specifies the period of its duration, it terminates on the expiration of such period." (*Beatty Safway Scaffold* v. *Skrable* (1960) 180 Cal.App.2d 650, 654 [4 Cal.Rptr. 543].) Moreover, Labor Code section 2920, subdivision (a) provides an employment relationship may be terminated by the expiration of its appointed term. Here, the

parties' employment contract expressly provided: "The term of this EMPLOYMENT AGREEMENT shall be for a one year period commencing on July 1, 1984, and terminating on June 30, 1985." Consequently, under the common law and statute, her right to continue employment expired with the contract term.

Further, the contract is precise. The language "there is no obligation on the part of the DIOCESE, SCHOOL, or ADMINISTRATOR to renew this contract at the end of that term" is subject to no conflicting interpretation or inference potentially imposing a duty to renew.

## THERE IS NO IMPLIED-IN-FACT CONTRACT OR IMPLIED PROMISE HERE FOR RENEWAL ABSENT GOOD CAUSE NOT TO DO SO

Tollefson, however, acknowledges the Diocese was contractually privileged not to renew her one-year administrator's contract, but only if it reached its decision after reasonably applying an objective standard compelled by the implied covenant of good faith and fair dealing. Her stream of conscious presentation appears to be founded on the professional nature of her administrative position, her long service with the Diocese, her prior contract renewals, the Diocese's failure to evaluate her performance, the lack of negative evaluations and an alleged custom and practice to retain teachers and administrators in their positions so long as they perform satisfactorily.

Preliminarily, this "evidence" does not establish an implied agreement to employ her indefinitely absent good cause for not renewing the employment relationship in light of this underlying written contract expressly providing for a one-year term of employment without an obligation to renew. For, " 'California law presumes a written contract supersedes all prior or contemporaneous oral agreements. [Citations.] Parol evidence is admissible to establish the terms of the complete agreement of the parties only if the written agreement is not the complete and final embodiment of that agreement. [Citation.]' " (*Anderson* v. *Savin Corp.* (1988) 206 Cal.App.3d 356, 364 [254 Cal.Rptr. 627], quoting *Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 314 [231 Cal.Rptr. 820].) Indeed, there simply cannot exist a valid express contract on one hand and an implied contract on the other, each embracing the identical subject but requiring different results and treatment. (*Wilkerson* v. *Wells Fargo Bank* (1989) 212 Cal.App.3d 1217, 1226 [261 Cal.Rptr. 185]; *Anderson* v. *Savin Corp., supra*, 206 Cal.App.3d at p. 364; *Malmstrom* v. *Kaiser Aluminum & Chemical Corp., supra*, 187 Cal.App.3d at p. 316; *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 482 [199 Cal.Rptr. 613], criticized on other grounds in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 688, and disagreed with on other grounds in *Dabbs* v.

*Cardiopulmonary Management Services* (1987) 188 Cal.App.3d 1437, 1443 [234 Cal.Rptr. 129]; *Gianaculas* v. *Trans World Airlines, Inc., supra,* 761 F.2d at p. 1394; *Baker* v. *Kaiser Aluminum and Chemical Corp.* (N.D.Cal. 1984) 608 F.Supp. 1315, 1320.) Consequently, just as an employee's allegations of an implied-in-fact contract for continuing employment and benefits cannot rebut that employee's status as an at-will employee (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at p. 482), neither can Tollefson's averments here transmute her fixed one-year term contract without an obligation to renew into a contract for continuing employment terminable within the context of being nonrenewable only for just cause. (*Piper* v. *Board of Trustees of Com. Col., etc.* (1981) 99 Ill.App.3d 752 [55 Ill.Dec. 287, 426 N.E.2d 262, 265].) ■ ■■■■ ■ In any event, even if such allegations are considered, lengthy service combined with promotions and salary increases are natural occurrences for an employee who remains with an employer for a substantial length of time and do not evince or create an implied agreement for permanent employment, terminable within the context of nonrenewal only upon just cause. (Cf. *Miller* v. *Pepsi-Cola Bottling Co.* (1989) 210 Cal.App.3d 1554, 1558-1559 [259 Cal.Rptr. 56].)[4]

■ Tollefson also suggests a "duty to consider renewal" was created by the language of the agreement requiring the Diocese to provide services of other administrative personnel to assure her "professional growth" while she was employed as assistant principal. She asserts the contract established the professional character of her employment, requiring her to conduct herself both vocationally and personally in a professional manner consistent with the aims of the Diocese. In return she argues the Diocese had an obligation "to assure . . . [her] professional growth." Because the Diocese's decision not to renew her administrator's contract would directly impair her professional growth, she contends the Diocese was contractually privileged not to renew her only after reasonably applying an objective standard of good faith and fair dealing to the precise issue of renewal. This argument endeavors to impose a duty to promote Tollefson's professional growth by not terminating her without good cause. As we have already explained, to imply such an obligation contrary to the express terms of the contract would be to force the Diocese into a new contract substantially different from the original into which it entered.[5] The fundamental principle of

---

[4] Regarding Tollefson's declaration pertaining to "custom and practice," it is deficient because neither custom nor usage can be relied upon if in conflict with the express terms of the contract. (*New York Cent. R.R. Co.* v. *F.H. Buck Co.* (1935) 2 Cal.2d 384, 394 [41 P.2d 547].) In fact, where the parties have fixed a definite term of employment by agreement, evidence of custom regarding the precise subject and inconsistent with the parties' agreement is immaterial. (*Fuqua* v. *Thomas* (1929) 96 Cal.App. 304, 305 [273 P. 1091].)

[5] Moreover, this "duty to consider renewal" cannot be inferred from any alleged ambiguity within the phrase "wish to retain" used in the agreement in the context of the Diocese in-

freedom of contract confers upon these parties the freedom to craft an agreement subject to specific limitations. "Their agreement will be enforced so long as it does not violate legal strictures external to the contract, such as laws affecting union membership and activity, prohibitions on indentured servitude, or . . . other legal restrictions . . . which place certain restraints on the employment arrangement." (*Foley* v. *Interactive Data Corp., supra,* 47 Cal.3d at p. 677.)

## SUMMARY JUDGMENT WAS PROPERLY GRANTED AS TO THE REMAINING CAUSES OF ACTION

 There is no triable issue of fact regarding Tollefson's third cause of action for "negligence in discharge." She theorizes that because the Diocese owed her a duty of reasonable care in reviewing her performance and informing her of any performance deficiencies so she could improve the quality of her performance, the Diocese's failure to provide her with written evaluations made it impossible for her to correct any perceived deficiencies in her job performance which may have been a substantial factor in her nonrenewal.

No California case has recognized a tort action for negligent performance of a contractual duty to evaluate, although it has been recognized in Michigan as well as other jurisdictions. (*Chamberlain* v. *Bissell Inc.* (W.D.Mich. 1982) 547 F.Supp. 1067, 1081; *Schipani* v. *Ford Motor Co.* (1981) 102 Mich.app. 606 [302 N.W.2d 307, 315]; Wrongful Employment Termination Practice (Cont.Ed.Bar 1987) § 4.87, pp. 160-161; see also *Crenshaw* v. *Bozeman Deaconess Hosp.* (1984) 213 Mont. 488 [693 P.2d 487, 493]; *Brooks* v. *Trans World Airlines, Inc.* (D.Colo. 1983) 574 F.Supp. 805, 810.) However, even under Michigan law, a complete failure to perform an evaluation as alleged here is actionable only as a breach of contract. (*Chamberlain* v. *Bissell Inc., supra,* 547 F.Supp. at p. 1081; Wrongful Employment Termination Practice, *supra,* at p. 161.) Consequently, we do not address the propriety of such a negligence cause of action, but confine our analysis to whether there is a triable issue of fact as to Tollefson's assertion the Diocese breached its contractual obligation to provide services of other administrative personnel for purposes of evaluation to assure her "professional growth." As a matter of law, she does not state a cause of action because she can allege no compensable damages under this contract. The Diocese was not contractually obligated to renew her contract regardless of her performance, a proposition for which she expressly bargained.

---

forming another administrator and offering a written contract by March 15 and April 15 respectively. Neither of the two articles where this phrase is used even remotely suggests Tollefson had any right to be considered for renewal. Rather, the language is clear on its face and entirely consistent with article IV stating neither party has an obligation to renew.

 Summary judgment was proper as to the cause of action for intentional infliction of emotional distress. To be actionable, Tollefson must demonstrate the existence of a triable issue of material fact regarding the existence of "outrageous conduct," an essential element to the action. (*Fowler* v. *Varian Associates, Inc.* (1987) 196 Cal.App.3d 34, 44 [241 Cal.Rptr. 539].) "To be 'outrageous,' conduct 'must be so extreme as to exceed all bounds of that usually tolerated in a civilized community.' [Citation.] Moreover, ' "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." ' [Citations.]" (*Ibid.*) Indeed, "[b]ecause this factor requires inquiry into the appropriateness of a defendant's behavior, it is necessary to examine the terms of the collective bargaining agreement. If permitted by the agreement, the conduct of the defendant which has been called into question might be deemed reasonable." (*Moreau* v. *San Diego Transit Corp.* (1989) 210 Cal.App.3d 614, 625 [258 Cal.Rptr. 647].) Here, the record does not offer a construction supporting a determination the Diocese acted "outrageously." Rather, the contract clearly stated the Diocese had no obligation to renew at the end of the term and specifically provided the Diocese with the right to transfer Tollefson to an instructional position within the school. Secondly, the Diocese conducted itself in accordance with the contract by notifying Tollefson within its time prescriptions. Finally, as evidenced by Ramos's letter of notification, the record is devoid of any evidence the Diocese acted in an outrageous manner.[6]

## DISPOSITION

The judgment is affirmed.

Kremer, P. J., and Domnitz, J.,* concurred.

---

[6] As to her husband's causes of action for negligent infliction of emotional distress and loss of consortium, the trial court properly granted the motion for summary judgment for the reasons stated in *Anderson* v. *Northrop Corp.* (1988) 203 Cal.App.3d 772, 776-781 [250 Cal.Rptr. 189].

* Assigned by the Chairperson of the Judicial Council.