[No. H012194. Sixth Dist. Sept. 27, 1995.]

CYNTHIA HAGGARD, Plaintiff and Appellant, v.
KIMBERLY QUALITY CARE, INC., et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

*The opinion has been certified for publication except for part II, pursuant to rule 976(b) of the California Rules of Court.

COUNSEL

Stoner, Walsh & Schmidt, Katherine E. Stoner and Michelle A. Welsh for Plaintiff and Appellant.

Jackson, Lewis, Schnitzler & Krupman, Nancy E. Egan and Robert M. Pattison for Defendants and Appellants.

OPINION

COTTLE, P. J.—Plaintiff Cynthia Haggard alleged that Kimberly Quality Care, Inc., and Kimberly Home Health Care, Inc. (collectively KQC) breached an implied contract to terminate her employment only for cause, and that KQC and certain employees discriminated against her on the basis of disability. A jury awarded plaintiff damages of $250,000 on her breach of contract claim, but no recovery on her disability discrimination claim. KQC appeals from the portion of the judgment relating to the implied contract claim, contending that the trial court erred in admitting evidence to contradict the terms of a written employment contract. Plaintiff cross-appeals from the portion of the judgment relating to her disability discrimination claim, raising issues relating to the statute of limitations and jury instructions. We reverse the portion of the judgment relating to the implied contract claim,

and affirm the portion of the judgment regarding the disability discrimination claim.

Due to the distinct nature of the claims made by each party on appeal, we will summarize the factual background regarding the appeal and cross-appeal separately.

## I. KQC's Appeal

### A. *Factual Background Regarding Implied-in-fact Contract*

Quality Care, Inc., hired plaintiff as a field staff supervisor in its Monterey branch office in January 1986. In 1987 Quality Care, Inc., promoted plaintiff to the position of branch manager. In 1988 Quality Care, Inc., merged with Kimberly, Inc., to form KQC. KQC employed plaintiff after the 1988 merger.

#### 1. *The 1989 Agreement*

On June 8, 1989, plaintiff signed an "Employment and Confidentiality Agreement" (Agreement or 1989 Agreement) with KQC. The Agreement contained provisions regarding access to trade secrets, confidentiality, customer lists, and termination of employment. For purposes of this appeal, the crucial provisions are paragraphs 9 and 15, which provide as follows: "9. *Termination.* It is understood that the employment relationship between Employee and the Company is at the mutual consent of both parties. Accordingly, either Employee or the Company can terminate the employment relationship at will, at any time, with or without cause or advance notice. It is further understood that no employee or representative of the Company, other than the president of Company, has any authority to enter into an agreement for any specified period of time, or to make any agreement contrary to the foregoing. Moreover, the parties agree that there are no express or implied agreements contrary to the foregoing, and the president of the Company, can only enter into an agreement contrary to the foregoing if the president does so in a formal written agreement that is fully executed by the president and Employee. [Paragraphs 10-14 omitted.] [¶] 15. *Final Agreement.* This Agreement supersedes all previous agreements, whether written or oral, express or implied, relating to the above subject matter, and shall not be changed or subject to change orally."

Plaintiff testified that she read the Agreement before she signed it. She also testified that she "had some reluctance to sign the document," but did so understanding that her continued employment with KQC was contingent upon signing it.

## 2. *The 1991 Employee Handbook*

On December 5, 1991, plaintiff signed and dated an acknowledgment of her receipt of a KQC associate orientation handbook. The receipt provides: "The policies and guidelines in this handbook have been adopted voluntarily by Kimberly Quality Care and are not intended to give rise to contractual rights or obligations, nor to be construed as a guarantee of employment for any specific period of time or any specific type of work. You are an 'at-will' associate, meaning that your employment is for no definite period of time and may be terminated by you or by KQC at any time and for any reason. Furthermore, KQC reserves the right to interpret, amend, modify or cancel and withdraw any or all sections or provisions of this handbook at any time. [¶] I certify that I have received a copy of the Kimberly Quality Care Associate Orientation Handbook. I acknowledge that I am responsible for knowing and adhering to the Policies and Procedures of Kimberly Quality Care while I am working as an associate of the company." Plaintiff testified that the handbook was distributed to all administrative employees nation-wide in 1991.

## 3. *Termination of Plaintiff's Employment*

Slightly over six weeks later, on January 20, 1992, KQC terminated plaintiff's employment. The parties vigorously dispute the reason for this termination. Briefly, KQC contends that it decided to terminate plaintiff's employment as branch manager because plaintiff knowingly allowed an unlicensed nurse to work on a case involving a ventilator patient, in violation of KQC's policies and the state regulations governing KQC. Plaintiff contends that she was blamed for "another employee's clinical error," and that KQC discriminated against her on the basis of her disability (multiple sclerosis), which had been diagnosed in 1990.

## 4. *This Litigation*

Plaintiff filed her original complaint in this case on March 31, 1992, alleging causes of action for breach of contract, wrongful discharge, employment discrimination, intentional and negligent infliction of emotional distress, and invasion of privacy. After various pretrial proceedings, the breach of implied contract and disability discrimination claims were tried to a jury beginning on September 13, 1993.

In her cause of action for breach of an alleged implied contract, plaintiff claimed that the termination of her employment violated an implied-in-fact contract that her employment could be terminated only for good cause. In

support of her implied contract theory, plaintiff offered evidence of factors such as the duration of her employment, commendations, promotions, raises, annual performance ratings, and KQC's personnel policies and practices.

Despite KQC's consistent efforts to have evidence of the alleged implied-in-fact contract excluded,[1] the evidence was admitted and the question of the implied contract was submitted to the jury.

During its deliberations, the jury asked the trial court, "Does an 'at-will' contract of employment 'super[s]ede' an 'implied' contract, legally?" The court responded: "Somebody could write a long Law Review article on this. I'm not kidding you, somebody could write a long review, a long Law Review article in response to this, because there are so many possibilities and so many factors that you have to take into account before you can say yes or no. [¶] All I can say is, depends. [¶] The Foreperson: Thanks. [¶] The Court: Depends on the circumstances surrounding the parties' relationship, along with all the exhibits that you have in your jury deliberation room." The jury returned to its deliberations. The court later recalled the jury and provided an additional instruction on the integration issue.[2]

After further deliberations, the jury returned its verdict. On a special verdict form, the jury indicated its findings that KQC had entered an implied contract to terminate plaintiff's employment only for good cause, and that the termination had been without good cause. The jury found that plaintiff was entitled to damages of $250,000 on this claim.

## B. *Discussion*

 On appeal, KQC argues that the trial court "erred when it did not rule that, as a matter of law, an integrated express at-will agreement barred [plaintiff's] cause of action for breach of an implied contract."

---

[1]KQC filed a motion *in limine* to exclude parol evidence of the alleged implied contract, and a motion for nonsuit on the implied contract claim at the close of plaintiff's case. These motions were denied, and the implied contract issue was submitted to the jury. After the jury's verdict in plaintiff's favor on this issue was returned, KQC moved for judgment notwithstanding the verdict, which was also denied.

[2]The additional jury instruction stated: "You are to determine what was the parties' contract as of the date of Plaintiff's termination. A written at-will contract is binding if the parties intend it to be the exclusive and final embodiment of their contract. [¶] In determining this question, you must consider the actual language of any written contract as well as the circumstances surrounding Plaintiff's employment, as you have already been instructed." Although the parties prepared and agreed upon this instruction, KQC reserved its position that whether the agreement was integrated should be decided by the court.

### 1. *The 1989 Agreement's At-will Termination Provision*

Paragraph 9 of the 1989 Agreement, which specifically provides that "either Employee or the Company can terminate the employment relationship at will, at any time, with or without cause or advance notice," is clearly an agreement for at-will employment.[3] Plaintiff claims that despite this provision in the 1989 Agreement, she had an implied-in-fact contract with defendants that her employment was not at-will, but could be terminated only for cause. Defendants contend that plaintiff should not have been allowed to introduce evidence of this alleged implied contract at trial.

### 2. *Evidence of Prior and Contemporaneous Agreements: the Parol Evidence Rule*

California's parol evidence rule is codified in section 1856 of the Code of Civil Procedure. Subdivision (a) of section 1856 provides: "Terms set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." (*Slivinsky* v. *Watkins-Johnson Co.* (1990) 221 Cal.App.3d 799, 804-805 [270 Cal.Rptr. 585]; *Gerdlund* v. *Electronic Dispensers International* (1987) 190 Cal.App.3d 263, 270 [235 Cal.Rptr. 279].)

"The court shall determine whether the writing is intended by the parties as a final expression of their agreement with respect to such terms as are included therein . . . ." (Code Civ. Proc., § 1856, subd. (d).) Whether the agreement is an integration is thus a question of law for the court.[4] (*Slivinsky* v. *Watkins-Johnson Co., supra*, 221 Cal.App.3d at p. 805.)

"An integration may be partial, as well as complete; that is, the parties may intend that a writing finally and completely express certain terms of their agreement rather than the agreement in its entirety." (*Wagner* v. *Glendale Adventist Medical Center* (1989) 216 Cal.App.3d 1379, 1385 [265 Cal.Rptr. 412]; *Masterson* v. *Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561].) If only part of the agreement is integrated, the parol evidence rule applies to that part. (*Slivinsky* v. *Watkins-Johnson Co., supra*, 221 Cal.App.3d at p. 805.) If a writing is deemed integrated, extrinsic

---

[3]This agreement is consistent with Labor Code section 2922, which provides in part that "[a]n employment, having no specified term, may be terminated at the will of either party . . . ."

[4]Where, as here, the trial court's interpretation of the agreement did not turn on the credibility of extrinsic evidence and did not require a resolution of a conflict in that evidence, we make an independent determination as to whether the agreement was integrated. (See *Gerdlund* v. *Electronic Dispensers International, supra*, 190 Cal.App.3d at p. 270.)

evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. (*Ibid.*)

■ In determining the intent of the parties regarding whether the written agreement is integrated, the court must attempt to place itself in the same situation in which the parties found themselves at the time of contracting. (*Gerdlund* v. *Electronic Dispensers International, supra,* 190 Cal.App.3d at p. 270.) The court may consider evidence of the circumstances surrounding the formation of the contract, and prior negotiations, to determine whether the writing was intended as the final and complete expression of the parties' agreement. (*Wagner* v. *Glendale Adventist Medical Center, supra,* 216 Cal.App.3d at p. 1386.) The proposed parol evidence is also considered by the court to determine whether the parties intended it to be a part of their bargain at the time of contracting. If the proposed parol evidence directly contradicts an express provision of the written agreement, however, "it cannot reasonably be presumed that the parties intended to integrate two directly contradictory terms in the same agreement." (*Gerdlund, supra,* 190 Cal.App.3d at p. 271.)

■ Applying these principles to this case, we are persuaded that the 1989 Agreement was integrated with respect to the termination provision in paragraph 9. That paragraph contains its own integration provision, which states that there are "no express or implied agreements contrary" to the at-will provision, that no employee or representative of the company other than the president of the company may make any contrary agreement, and that the president "can only enter into an agreement contrary to the foregoing if the president does so in a formal written agreement that is fully executed by the president and Employee." Paragraph 15 also states that the 1989 Agreement is integrated. "This Agreement supersedes all previous agreements, whether written or oral, express or implied, relating to the above subject matter and shall not be changed or subject to change orally." It is difficult to imagine how the parties could have more fully expressed their intent to make the Agreement a full and complete statement of their contract regarding the grounds for termination.[5] Plaintiff acknowledged and agreed to these integration provisions by signing the 1989 Agreement.

■ The circumstances surrounding the formation of the contract support the conclusion that the agreement was integrated as to paragraph 9's termination provision. Plaintiff testified that she read the agreement before signing it, and that she "had some reluctance to sign the document," but did so

---

[5]This case must be distinguished from cases in which the document at issue did not contain both an at-will termination provision and an integration clause. (See, e.g., *Seubert* v. *McKesson Corp.* (1990) 223 Cal.App.3d 1514 [273 Cal.Rptr. 296].)

understanding that her continued employment was contingent on signing it. By signing the contract, she agreed to both the at-will termination clause in paragraph 9 and the integration provisions of paragraphs 9 and 15. Plaintiff argues that because the 1989 Agreement was printed in "small type" and prepared by KQC, it could not be integrated. We disagree. Our review of the agreement reveals a legible, four-page agreement in which all provisions (other than two capitalized lines in paragraph 8) are similar in size and type. Plaintiff did, in fact, read it. The fact that the contract was drafted by one party does not prevent it from being an integrated agreement expressing the parties' intentions.

■ The circumstances surrounding the 1989 Agreement also defeat plaintiff's argument that the termination provision was not supported by consideration. Plaintiff's argument is based on her assumption that she held some status other than as an at-will employee prior to signing the Agreement. In fact, however, plaintiff had signed at least three prior agreements in 1986 and 1987 with Quality Care, Inc., KQC's predecessor, all clearly stating that her employment was at will.[6] In the face of these agreements, plaintiff could not have held a reasonable belief that she could be terminated only for good cause prior to the 1989 Agreement. In any event, plaintiff chose to sign the 1989 Agreement, which stated that the parties agreed that "there are no express or implied agreements contrary to the [termination at-will provision]" and that the 1989 Agreement supersedes all previous agreements. As a result of her promise, KQC continued plaintiff's at-will employment and paid her wages and benefits. The court will not inquire into the adequacy of consideration. (See *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 679 [254 Cal.Rptr. 211, 765 P.2d 373], citing *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 325-326 [171 Cal.Rptr. 917].)

■ Where the contract is integrated, parol evidence still might be admissible if it is " 'relevant to prove a meaning to which the language of the instrument is reasonably susceptible.' " (*Slivinsky* v. *Watkins-Johnson Co.*, *supra*, 221 Cal.App.3d at p. 805.) The written at-will provision here, however, is not "reasonably susceptible" to an interpretation that plaintiff's

---

[6]On January 8, 1986, while employed by Quality Care, Inc., plaintiff signed a contract entitled "Restrictive Covenant and Confidentiality Agreement." This contract stated: "This agreement contains the entire restrictive covenant and confidentiality and understanding and agreement between the parties. This agreement may not be orally changed, but may only be modified by a subsequent agreement in writing signed by the party against whom enforcement of any waiver, change or modification is sought. Nothing herein shall be construed as constituting employment for a stated term; the parties intend employment to be at will." On January 24, 1986, plaintiff signed another agreement stating that "Nothing herein shall be construed as constituting employment for a stated term because I understand that my employment is at will by the Company." In February 1987, plaintiff signed another "Restrictive Covenant and Confidentiality Agreement," containing the same provision.

employment could be terminated only for good cause. The Agreement states in no uncertain terms that employment is terminable by either party "at will, at any time, with or without cause or advance notice." The construction commanded by the language is inescapable. The alleged implied contract to terminate only for cause directly contradicts the written Agreement, and is not admissible to explain its meaning. (See *Gerdlund* v. *Electronic Dispensers International, supra*, 190 Cal.App.3d at p. 273 ["[t]estimony of intention which is contrary to a contract's express terms . . . does not give meaning to the contract; rather it seeks to substitute a different meaning"].) In addition, an agreement to terminate only for good cause could not "naturally" be made separately from the 1989 Agreement, which both specifically addresses grounds for termination and precludes such a collateral agreement.

■ Plaintiff argues that because the Agreement did not contain provisions such as salary, hours, position and benefits, but "dealt overwhelmingly with access to trade secrets, confidentiality, and noncompetition . . . ," it was integrated only on the subjects of confidentiality and trade secrets. This argument is without merit. The plain language of the Agreement indicates that it covers various conditions relating to plaintiff's employment. (See *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467 [199 Cal.Rptr. 613], disapproved on other grounds in *Foley* v. *Interactive Data Corp., supra*, 47 Cal.3d at p. 688 [stock option agreement with clause regarding conditions of employment was integrated as to grounds for termination]; *Baker* v. *Kaiser Aluminum and Chemical Corp.* (D.C.Cal. 1984) 608 F.Supp. 1315, 1320-1321 ["patent agreement" created a binding terminable-at-will employment arrangement].) It is true that the 1989 Agreement does not set forth all of the terms that would ultimately govern the parties' relationship. But where a writing is intended by the parties as a final expression of their agreement with respect to particular terms, it is integrated as to those terms and they may not be contradicted by parol evidence. (See *Slivinsky* v. *Watkins-Johnson Co., supra*, 221 Cal.App.3d at p. 805; Code Civ. Proc., § 1856, subds. (a), (b).)

■ Finally, plaintiff contends that the termination provision could not be integrated because it specifically permitted the parties to modify their agreement in the future by means of a written agreement between the president and the employee. According to plaintiff, this provision "plainly indicated that the termination clause was subject to change, and therefore could not have been the final expression of the parties' intention." We do not accept plaintiff's analysis that no agreement may be integrated if it provides for a specific manner by which it may be modified in the future. The parties here intended to memorialize their understanding with respect to grounds for termination, subject *only* to later writings signed by the company's president

and the employee. That the termination provision could *not* be modified orally was part of the parties' integrated agreement. The case of *McLain* v. *Great American Ins. Companies* (1989) 208 Cal.App.3d 1476 [256 Cal.Rptr. 863], in which the employment application did not contain an integration clause and stated that the relationship would remain subject to change in terms and conditions, is not similar to this case, where the contract contains two integration provisions and provides a specific, exclusive method for written modification. Moreover, the effect of plaintiff's argument (that the contract's provision that modification must be in writing should operate to admit contrary oral agreements) would thwart the clear intentions of the parties.

█ Because the 1989 Agreement is integrated as to paragraph 9's at-will termination provision, section 1856 of the Code of Civil Procedure precludes the introduction of parol evidence of a prior or contemporaneous agreement to vary or contradict that provision.

### 3. *Implied Contracts Subsequent to the 1989 Agreement*

█ Plaintiff argues that even if evidence of an implied agreement established prior to 1989 was inadmissible under the parol evidence rule, "the trial court properly admitted evidence to show a *subsequent* implied agreement superseded or modified the 1989 agreement." After the 1989 Agreement, however, it was absolutely clear to plaintiff that the at-will nature of her employment could only be modified in a "formal written agreement" signed by the president of KQC. In light of this express modification provision, no contract implied from oral statements or conduct could modify the termination provision of the Agreement. " 'There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results.' " (*Malmstrom* v. *Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.3d 299, 316 [231 Cal.Rptr. 820]; *Tollefson* v. *Roman Catholic Bishop* (1990) 219 Cal.App.3d 843, 855 [268 Cal.Rptr. 550]; see also *DeHorney* v. *Bank of America Nat. Trust and Sav.* (9th Cir. 1989) 879 F.2d 459, 466 [written at-will contract was not modified by a later implied contract to terminate only for cause based on corporate code of conduct and policies].)

In this case, the 1989 Agreement was absolutely clear that the relationship was at-will, and that this term could only be modified by an agreement signed by the company's president. Having signed this clear and exclusive modification provision, plaintiff could not reasonably have relied on an alleged implied contract, which was not in a writing signed by the president, to modify the Agreement. In the absence of such a written modification, the

parties had agreed that their entire understanding on this issue was set forth in the 1989 Agreement, and were entitled and required to live with the agreed terms. Evidence of oral statements and conduct was thus not admissible to create an implied contract directly contradicting paragraph 9's at-will termination provision.

### 4. *Written Modification of the 1989 Agreement*

■ Evidence could be introduced, however, of a subsequent written modification of the 1989 Agreement. Plaintiff claims that the 1991 employee handbook was such a modification. The handbook was accompanied by a cover letter signed by KQC's president, and plaintiff signed a document acknowledging her receipt of the handbook. Plaintiff emphasizes that the handbook reserved the right to change any and all employment policies, contained progressive discipline procedures, and repeatedly promised to treat employees "very well" and to apply personnel policies.

We have examined the 1991 administrative associate handbook and plaintiff's signed receipt for the handbook, and find no evidence that these documents constituted or contained any modification of the at-will termination provision of the 1989 Agreement.[7] To the contrary, both the handbook and the receipt were entirely consistent with the at-will termination provision of the 1989 Agreement. The receipt provided: "You are an 'at-will' associate, meaning that your employment is for no definite period of time and may be terminated by you or KQC at any time and for any reason." The handbook itself repeatedly stated that the employment relationship was terminable at will. Its preface states that the policies and guidelines in the handbook "are not intended to give rise to contractual rights or obligations, nor to be construed as a guarantee of employment for any specific period of time or any specific type of work. You are an 'at will' employee, meaning that your employment is for no definite period of time and may be terminated by you or by KQC at any time and for any reason." In a section entitled "Definition of Employment Status," the handbook states: "Being introductory or non-introductory does not affect the fact that employment at all times is at the mutual consent of KQC and of the associate and either may terminate the employment relationship at will at any time for any reason." With regard to "Performance Improvement/Corrective Discipline," the handbook provides: "The company may utilize a system of progressive discipline,

---

[7]Because we find that the handbook and receipt did not modify the termination provision of the 1989 Agreement, we need not address the parties' dispute as to whether these documents could together constitute a "formal written agreement that is fully executed by the president and Employee," as required by paragraph 9 of the 1989 Agreement for modification of that paragraph's terms.

at its sole discretion, in cases of misconduct or unacceptable performance. The use of such a system does not waive either the company's or your right to terminate employment at any time with or without cause." We find no evidence that the handbook or its receipt constituted a modification of the at-will termination provision of the 1989 Agreement.

Plaintiff argues that the receipt's statement that "KQC reserves the right to interpret, amend, modify or cancel and withdraw any or all sections or provisions of this handbook at any time" modifies the at-will termination provision of the 1989 Agreement. We disagree. The receipt clearly reaffirms that employment is at-will. The grounds for termination were the subject of an express agreement, and could only be changed in writing; they were not changed by this document.

Plaintiff also focuses on the following statement in the "Security of Company Information" section of the handbook: "All branch managers, regional director/vice presidents, sales persons and certain key support staff are required to sign the company non-compete agreement as a condition of employment. All other administrative associates are required to sign the confidentiality agreement as a condition of employment. Neither agreement is considered an employment contract." On the basis of this provision, plaintiff argues that the 1989 Agreement cannot be integrated because it is "not even an employment contract." This argument is without merit. The question is not whether the 1989 Agreement is an "employment contract," but whether the express provisions that it does contain (however categorized) are a complete expression of the parties' intent with regard to the topics covered.

Plaintiff argues that the handbook sets forth KQC's progressive discipline policies and "an array of commitments by [KQC] which were . . . intended to make employees committed to the company," such as the statement "We respect employee rights and uniformly apply written personnel policies." As noted above, however, the handbook clearly stated that progressive discipline, which it *may* utilize, "does not waive either the company's or your right to terminate employment at any time with or without cause." By its own terms, this section did nothing to modify plaintiff's 1989 Agreement.

Finally, plaintiff argues that the handbook "obligates employees to give two weeks' written notice of their intent to resign, and to state their reasons for leaving." The handbook itself, however, states only that an employee is "expected" to give at least two weeks' written notice to the supervisor "to

ensure a smooth transition and to prevent any unnecessary discomfort for your co-workers," and that the letter of resignation "should" state "your reason(s) for leaving and your last day of work." It is clear that these comments are advisory only, and do not modify the 1989 Agreement.

### 5. *Sufficiency of the Evidence*

In summary, we find that (1) evidence of prior and contemporaneous agreements is inadmissible to vary the 1989 Agreement, (2) the Agreement could not be modified orally or by conduct pursuant to its terms, and (3) the Agreement was not modified by any writing. ▆▆ The at-will termination provision of the 1989 Agreement remained the agreement of the parties at the time plaintiff's employment was terminated, and the trial court therefore erred in admitting evidence regarding an inconsistent alleged implied contract to terminate only for good cause.

This error was obviously prejudicial to KQC, because without evidence of the alleged implied contract there was no evidentiary basis for plaintiff to recover on her implied contract claim. The evidence is insufficient to support the judgment on the implied contract claim. " '[I]n determining whether substantial evidence supports a judgment, extrinsic evidence inconsistent with any interpretation to which the instrument is reasonably susceptible becomes irrelevant; as a matter of substantive law such evidence cannot serve to create or alter the obligations under the instrument. Irrelevant evidence cannot support a judgment.' " (*Gerdlund* v. *Electronic Dispensers International*, *supra*, 190 Cal.App.3d 263, 276, quoting *Tahoe National Bank* v. *Phillips* (1971) 4 Cal.3d 11, 23 [92 Cal.Rptr. 704, 480 P.2d 320], fn. omitted.) The judgment on plaintiff's cause of action for breach of an alleged implied contract must therefore be reversed, and judgment must be entered for defendants on this claim.

### II. Plaintiff's Cross-appeal*

. . . . . . . . . . . . . . . . . . . . . . . .

### III. Disposition

The portion of the judgment regarding plaintiff's implied contract claim is reversed, and the trial court is directed to enter judgment on this claim in favor of KQC. The portion of the judgment regarding plaintiff's employment

*See footnote, *ante*, page 508.

discrimination claim is affirmed. Costs in the appeal and cross-appeal are awarded to KQC.

Premo, J., and Elia, J., concurred.

The petition of appellant Cynthia Haggard for review by the Supreme Court was denied December 14, 1995. Mosk, J., was of the opinion that the petition should be granted.